# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ICG AMERICA, INC. (d/b/a "FLYING     :
NOODLE," "AMAZING CLUBS," AND     :
"CALIFORNIA REDS"),     :
                 Plaintiff,     :
    :     Case No. 3:09-cv-133 (PCD)
       v.     :
    :
WINE OF THE MONTH CLUB, INC.,     :
                Defendant.     :

## RULING ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER

Plaintiff filed this case on January 27, 2009, seeking declaratory judgment that Defendant's trademarks are invalid and unenforceable and that Plaintiff has not infringed the trademarks.[1]  On April 10, 2009, Defendant filed the instant Motion to Dismiss Plaintiff's complaint pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of jurisdiction and improper venue.  Defendant alternatively moved to transfer the proceedings to the United States District Court for the Central District of California under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. §§ 1404(a) and 1406(a).  Defendant also moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Connecticut Unfair Trade Practices Act ("CUTPA") claim.  For the reasons stated herein, Defendant's Motion to Dismiss or Transfer [Doc. No. 8] is **denied.**

---

[1]Plaintiff's original complaint named both Wine of the Month Club, Inc. and Paul Kalemkiarian, President of Wine of the Month Club, as Defendants.  Subsequent to receipt of the motion to dismiss, Plaintiff made a Motion to Amend its Complaint to, *inter alia*, drop Kalemkiarian as a Defendant based on new information regarding the ownership of the trademarks at issue. See Mot. to Amend. [Doc. No 11]. Plaintiff's Motion to Amend was granted by the Court [Doc. No 19] and an Amended Complaint was filed on May 19, 2009. [Doc. No 21]

1

I.    **BACKGROUND**

This dispute concerns whether Plaintiff may continue to advertise the monthly wine products selections it offers on its websites using the phrases "wine of the month club" and "wine of the month."  Plaintiff is ICG America, Inc., a Delaware corporation with a place of business in Stamford, Connecticut.  (Am. Compl.¶ 2.)  Plaintiff does business as Flying Noodle, Amazing Clubs and California Reds and sells wine, beer, coffee, flower arrangements, chocolate and other goods by phone and Internet through its websites.[2] (Id. ¶ 3.)  Plaintiff offers merchandise and buying-club memberships to consumers via the Internet and mail order. (Id.)

Defendant is Wine of the Month Club, Inc., a California corporation with a place of business in Monrovia, California, that sells wine and a variety of wine-related gifts by phone and Internet through its website.[3] (Id. ¶¶ 4-5.)  Defendant is the record owner of U.S. Trademark Registration No. 1,500,846 for the mark: WINE OF THE MONTH CLUB, registered for "mail order services in distribution of wine" (Id. ¶ 6), the record owner of U.S. Trademark Registration No. 2,881,828 for the mark: WINE OF THE MONTH CLUB, registered for "newsletters pertaining to food and drink" (Id. ¶ 7), and the record owner of U.S. Trademark Registration No. 1,246,348 for the mark: WINE OF THE MONTH, registered for "newsletters pertaining to food and drink." (Id. ¶ 8.)

On December 3, 2007, Defendant sent two cease and desist letters (the "December 2007 Cease and Desist Letters") to Plaintiff's offices in Connecticut alleging that Plaintiff, doing business as Amazing Clubs and California Reds, had infringed its trademark and service mark

---

[2]Plaintiff's websites are: www.AmazingClubs.com, www.FlyingNoodle.com, and www.CaliforniaReds.com. (Am. Compl. ¶ 3.)

[3]Defendant's website is www.wineofthemonthclub.com. (Am. Compl. ¶ 5.)

rights. (Id. ¶ 32; Pl.'s Am. Mem. in Opp'n to Mot. to Dismiss or Transfer at 7.)  In those letters, Defendant demanded monetary compensation and threatened legal action for the alleged infringement if Plaintiff did not immediately cease its use of Wine of the Month Club's marks and name. (Am. Compl. ¶ 33.)   Defendant also contended that Plaintiff was guilty of false designation of origin and unfair competition. (Id.)  Plaintiffs did not respond to the December 2007 Cease and Desist letters. (Id. ¶ 35.)  On December 10, 2008, Defendant sent Plaintiff, doing business as Flying Noodle, another cease and desist letter (the "December 2008 Cease and Desist Letter") that contained the same allegations as the December 2007 Cease and Desist letters. Plaintiff did not respond. (Id. ¶¶ 36-37, 39.)  On January 13, 2009, Defendant sent another cease and desist letter to Plaintiff that requested an accounting of revenues, costs and profits so that Defendant could determine monetary damages.  (Id. ¶ 40.)  Again, Plaintiff did not respond. (Id. ¶ 42.)

On or about November 19, 2008, Plaintiff discovered that the advertisements it had previously purchased from Google to advertise the monthly wine buying clubs offered by California Reds had been disapproved, which prevented Internet users from seeing Plaintiff's advertisements.  (Id. ¶¶ 46-47.)  On or about December 17, 2008, Plaintiff learned that Yahoo had similarly rejected all keyword purchases and advertisements that Plaintiff had previously bought to advertise the monthly wine buying clubs offered by its Flying Noodle brand.  (Id. ¶ 51.)  Plaintiff contends that Google and Yahoo rejected its advertisements in direct response to Defendant's complaints.  (Id. ¶¶ 50, 55.)  Plaintiff alleges that Defendant's actions interfered with its ability to market and advertise the monthly wine buying clubs that it sells through its websites, which resulted in lost revenues and significant injury to Plaintiff. (Id. ¶ 57.)

Plaintiff seeks a declaratory judgment of the invalidity of Defendant's trademark, a declaratory judgment of the unenforceability of Defendant's trademark, and a declaratory judgment of its non-infringement. (Am. Compl. ¶¶ 67, 71-72.)  Plaintiff also seeks a declaratory judgment that its use of Defendant's marks has not violated § 43(a) of the Lanham Act or constituted unfair competition. (Id. ¶ 76.)  Plaintiff moves for cancellation of Defendant's trademark (Id. ¶ 79) and seeks monetary damages for Defendant's alleged violation of CUTPA. (Id. ¶ 82.)  Defendant has moved to dismiss Plaintiff's complaint for lack of jurisdiction and improper venue, and alternatively moves to transfer the proceedings to the Central District of California. (Def.'s Mot. to Dismiss or Transfer at 1.) It has also moved to dismiss Plaintiff's CUTPA claim. (Id. at 2.)

## II.    STANDARD OF REVIEW

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant.  Johnsen, Fretty & Co. v. Lands South, LLC, 526 F.Supp.2d 307, 310 (D. Conn. 2007).  However, the plaintiff is required only to make a *prima facie* showing that personal jurisdiction exists because the parties have not conducted jurisdictional discovery and the Court has not held an evidentiary hearing.  Gerber Trade Fin., Inc. v. Davis, Sita & Co., P.A., 128 F.Supp.2d 86, 89 (D. Conn. 2001).  The issue of personal jurisdiction is resolved based on the parties' pleadings, affidavits, and supporting materials "construed in the light most favorable to the plaintiff and with all doubts resolved in the plaintiff's favor." Id.  When the proceedings are in their beginning stages, the plaintiff's *prima facie* burden is satisfied by good faith allegations in the pleadings.  Id. at 90.  Plaintiff must eventually prove the jurisdictional facts by a preponderance of the evidence at an evidentiary hearing or trial.  Id.

4

## III.     PERSONAL JURISDICTION

To resolve whether the defendant is subject to personal jurisdiction in diversity jurisdiction cases, a federal court must apply the law of the forum state in which it sits.  Id. Connecticut law mandates that to determine whether a court has personal jurisdiction over a foreign defendant, the court must first decide whether it has jurisdiction under Connecticut's long-arm statute. Id.  If so, the court must next consider whether exercising personal jurisdiction over the defendant comports with constitutional due process.  Id.

### A.  Connecticut's Long-Arm Statute

The court must first determine whether the Connecticut long-arm statute authorizes personal jurisdiction over the defendant.  Conn. Gen. Stat. § 33-929(f) provides that:

> every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising out of . . . (2) repeated business solicited in Connecticut by mail or otherwise; (3) the production, manufacture or distribution of goods with the reasonable expectation that such goods are to be used or consumed in Connecticut and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold . . .

Conn. Gen. Stat. § 33-929(f).  Defendant submits that it does not ship its wine to Connecticut because state law prohibits doing so, and that Defendant therefore has not distributed its product for consumption in Connecticut. (Def.'s Mem. in Support of Mot. to Dismiss or Transfer at 7.) Defendant also contends that its website is passive in relation to the residents of Connecticut because neither the website nor Defendant's advertisements specifically target Connecticut. (Id. at 8-9.)  Defendant's argument fails because its website and e-mail campaigns solicit business in Connecticut from Connecticut residents, and persons in Connecticut do purchase goods from Defendant, even if the wine is shipped elsewhere.  This conduct satisfies the second condition

of the Connecticut long-arm statute, specifically that "repeated business solicited in Connecticut by mail or otherwise." Conn. Gen. Stat. § 33-929(f).

Defendant relies on the fact that it does not ship wine to Connecticut to establish that its website is passive as to Connecticut's residents (Def.'s Mem. in Support of Mot. to Dismiss or Transfer at 7). However, where a product is shipped does not dictate whether the website is active or passive. Whether the exercise of personal jurisdiction is permissible is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 251 (2d Cir. 2007) (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc. 952 F.Supp. 1119, 1124-25 (W.D.Pa.1997)). The standards set in Zippo have been applied by many courts to determine in what circumstances the operation of an Internet website serves to establish personal jurisdiction. Id. Internet use has been broken down into three categories to determine whether personal jurisdiction exists:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on the Internet Web site which is available to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Zippo, 952 F.Supp. at 1124. Interactive, commercial websites permit personal jurisdiction to be exercised over a defendant. Id. "One who uses a web site to make sales to customers in a distant state can thereby become subject to the jurisdiction of that state's courts." Mashantucket Pequot Tribe v. Redican, 309 F.Supp.2d 309, 317 (D. Conn. 2004).

Because Defendant's website sells its products, Defendant's website is interactive and commercial. While stating that it cannot ship to Connecticut, Defendant's website nonetheless explicitly advises consumers that they "may order from any state." [Doc. No. 28-2 at 32] Inviting residents of any state to order from its website amounts to a solicitation of business from Connecticut residents. Where the product is shipped does not negate that Defendant has invited Connecticut residents to purchase its products and they have done so. Connecticut courts have found that the state's long arm statute applies to convey personal jurisdiction over a nonresident corporate defendant where:

> the defendant reaches a plaintiff purchaser who actively engages in a transaction from Connecticut to purchase items from [defendant's] website that has reached them in their living room or office in Connecticut. The store has placed itself in Connecticut and accepted payment from a credit card transaction which has originated in Connecticut, for the purchase of goods offered by [defendant] in their online store . . . Further, the [defendant] was doing business in Connecticut at the salient times involved in this case with 2% of its worldwide sales in Connecticut.

Meta Group, Inc. v. IDC Research, Inc., No. (X10)NNHCV054016768S (CLD), 2006 WL 1230532, at *6 (Conn. Super. Apr. 20, 2006)(citations omitted). See also Mashantucket Pequot Tribe, 309 F.Supp.2d at 317; Nat'l Football League v. Miller, 2000 WL 335566, at *5-6 (S.D.N.Y. Mar. 30, 2000). Defendant admits that "it is possible that a Connecticut resident could use [its] website to order wine for someone in another state." (Def.'s Reply Mem. in Support of Mot. to Dismiss or Transfer at 8.) Plaintiff demonstrated as much when one of its employees, a Connecticut resident acting from his Connecticut office and using a credit card with a Connecticut billing address, placed an order on Defendant's website in May 2009 for delivery of wine to Texas. (Schwartz Aff.)

Plaintiff estimates Defendant's Connecticut-related sales to be approximately $18,000 per year, which is one quarter of one percent of the low end of Defendant's estimated yearly revenues of $7.2 million to $9.5 million. (Am. Levensohn Aff. 4.) While Defendant asserts that Plaintiff's estimation of Defendant's Connecticut-related sales is "disingenuous" (Def.'s Mem. of Law in Support of Mot. to Dismiss or Transfer at 6), Defendant did not provide a corrected figure, as one might have expected had the amount been negligible. In the absence of discovery on the matter, the Court does not rely on Plaintiff's estimate. In any case, the dollar amount of Defendant's Connecticut sales is not dispositive of the jurisdictional question. Courts have found that a defendant's website, if it is active like the one in question here, need not produce significant dollar sales from forum residents in order for the court to find purposeful availment. See Divicino v. Polaris Indus., 129 F.Supp.2d 425, 434 (D. Conn. 2001); Broad. Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., 345 F.Supp.2d 1053, 1062 (D. Conn. 2004); Stomp, Inc. v. Neato, LLC, 61 F.Supp.2d 1074, 1078 (D.Cal. 1999).

Defendant also solicited repeated business within Connecticut. One Connecticut resident, acting at the direction of Plaintiff to order Defendant's product from its website, received at least five promotional e-mails from Defendant in the month after purchasing its products. (Schwartz Aff. ¶ 11.) These e-mails aimed to promote Defendant's products and increase its sales in Connecticut, regardless of the fact that Defendant does not ship its products here. Defendant relies on Edberg v. Neogen Corp. for the proposition that personal jurisdiction is not permitted over a foreign defendant whose website is similar to a national advertisement. (Def.'s Mem. in Support of Mot. to Dismiss or Transfer at 10) (citing Edberg v. Neogen Corp., 17 F.Supp.2d 104, 114 (D. Conn.1998)). However, Neogen is clearly distinguishable, because the website in that case was passive, meaning that "Internet users could not order products directly from the Web site."

8

Neogen, 17 F.Supp. 2d at 114.[4]  In this case, Defendant's interactive, commercial website operates as a virtual store and transacts business within Connecticut.  Defendant promoted and sold its products to Connecticut residents through its website, specifically targeting them for repeat business through its e-mail campaigns. Defendant's interactive, commercial website permits the exercise of personal jurisdiction over Defendant under Connecticut's long-arm statute.

### B.  Due Process

The second inquiry before the Court is whether exercising personal jurisdiction over Defendant comports with constitutional due process. There are two prongs to this analysis.  First, the Court must determine whether a foreign defendant has the necessary "minimum contacts" with the forum state. Broad. Mktg., 345 F.Supp.2d at 1060.  Second, the Court must consider whether exercising personal jurisdiction over a foreign defendant is reasonable given the circumstances of the case. Id.

### 1.  Minimum Contacts and Purposeful Availment

To confer personal jurisdiction, the foreign defendant's action must establish 'certain minimum contacts . . . [so] that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted).  The defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its

---

[4]Defendant similarly relies on Milne v. Catuogno Court Reporting Serv., Inc., which held that "a defendant having a franchise in Connecticut, services to that franchise performed in Connecticut, transcription services bought by customers in Connecticut but performed outside of the state, and advertisements via a website did not rise to the level of 'transacting business.'" (Def.'s  Reply Mem. in Support of Mot. to Dismiss or Transfer at 3.) However, Milne differs from this case because there defendant's website was "passive and informational in nature. 'There [was] no evidence that any user in Connecticut accessed [Defendant's] Web site or purchased [services] based upon the Web site advertisement.'" Milne, 239 F. Supp.2d 195, 202 (D. Conn. 2002) (quoting Neogen, 17 F.Supp.2d at 114).

laws," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)), "such that [the defendant] should reasonably anticipate being haled into court there." Id. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Defendant maintains that it lacks the minimum contacts with Connecticut necessary to subject it to personal jurisdiction in this state. (Def.'s Mem. in Support of Mot. to Dismiss or Transfer at 4-10.) Defendant asserts that it has purposefully refrained from directing its advertising to Connecticut residents through its website or a direct mail campaign, and that it has no property, personnel or affiliates in Connecticut. (Id. at 4.) Defendant's argument that it has no physical presence in Connecticut fails because if a commercial actor's efforts are "purposefully directed" towards the state, it does not need to have a physical presence there to establish minimum contacts. Burger King Corp., 471 U.S. at 476. Plaintiff responds that Defendant purposefully availed itself of the privilege of doing business in Connecticut when it invited Connecticut residents to purchase products from Defendant's active website, and they did so. (Pl.'s Am. Mem. in Opp'n to Mot. to Dismiss or Transfer at 14-15.) Plaintiff also contends that in sending cease and desist letters to Plaintiff in Connecticut alleging trademark infringement, Defendant could reasonably expect to be haled into court in Connecticut. (Id. at 15-16.)

The due process inquiry focuses on the totality of the circumstances rather than relying on any mechanical criteria. Combustion Eng'g, Inc. v. NEI Int'l Combustion, Ltd., 798 F.Supp. 100, 105 (D. Conn. 1992). The mere existence of a website accessible from Connecticut does not demonstrate purposeful availment. Divicino,129 F.Supp.2d at 432-33; Neogen, 17 F.Supp.2d at 114. The level of commercial interactivity of a website determines whether the

10

defendant is transacting business or purposefully availing itself of the privilege of conducting activities within the forum State. See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 254 (2d Cir. 2007) (stating in *dicta* that the portion of a website that accepted monetary donations was at the "clearly do[ing] business" end of the Zippo spectrum); Citigroup Inc. v. City Holding Co., 97 F.Supp.2d 549, 565 (S.D.N.Y. 2000) (holding that a website that allowed customers in New York to apply for loans online and "chat" online with a company representative regarding home loan questions was commercial in nature and amounted to "transacting business" under the state's long-arm statute). Evidence that Connecticut residents accessed the defendant's site, that they purchased products from the website, or that the website targeted Connecticut residents is necessary to find purposeful availment. See Divicino, 129 F.Supp. 2d at 433.

       Defendant purposefully availed itself of the privilege of doing business in Connecticut. Its interactive, commercial website invites consumers "from any state," including Connecticut, to purchase its products. [Doc. No. 28-2 at 32] By operating a commercial website to promote and sell its goods, Defendant has extended itself beyond its home state of California to avail itself of the benefits of doing business in Connecticut. See Stomp, 61 F.Supp.2d at 1078 (citing Burger King, 471 U.S. at 473-74). Furthermore, Defendant sold its products to Connecticut residents and profited from such sales. "Although the actual number of sales. . . may be small, the critical inquiry in determining whether there was a purposeful availment of the forum state is the quality, not merely the quantity, of the contacts." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1265 (6th Cir. 1996). It is reasonable for Defendant to anticipate being haled into court in Connecticut to defend itself against claims related to the use of its mark because Defendant sold its services there. See Foot Locker Retail, Inc. v. SBH, Inc., No. 03 Civ. 5050 DAB, 2005 WL 91306, at *6 (S.D.N.Y. Jan.18, 2005). Purposeful availment is further demonstrated by

11

Defendant's directing email advertisements to Connecticut residents who had made prior purchases of its products. For example, Defendant sent at least five e-mails to a Connecticut resident after that resident made an online purchase, seeking to induce additional sales. (Pl.'s Am. Mem. in Opp'n to Mot. to Dismiss or Transfer at 17.) Purposeful activity within the state that results in minimum contacts with the forum state may include the solicitation of business by defendants. Scholastic, Inc. v. Stouffer, No. 99 Civ.11480(AGS), 2000 WL 1154252, at *4 (S.D.N.Y. Aug. 14, 2000); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1111 (2d Cir. 1997).

Defendant asserts that the cease and desist letters that it sent to Plaintiff's Connecticut offices are insufficient to convey jurisdiction over a declaratory judgment action regarding issues such as validity or non-infringement (Def.'s Reply Mem. in Support of Mot. to Dismiss or Transfer at 8) (citing Beacon Enter., Inc. v. Menzies, 715 F.2d 757, 766 (2d Cir. 1983) (holding that sending a cease and desist letter to New York was insufficient to constitute the transaction of business in New York); Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1386-88 (2d Cir. 1998) (holding that the cease and desist letters are of "insufficient quality and degree to be considered the 'transaction of business' under New York law because they do not constitute purposeful availment")). Unlike in those cases, however, Defendant's contacts with Connecticut involved more than simply sending cease and desist letters. As discussed above, Defendant maintained a website which permitted direct purchases by Connecticut residents, and Defendant deliberately solicited repeat business from these Connecticut customers through e-mail advertising campaigns. While the Second Circuit has held that sending a cease and desist letter to an alleged infringer is not by itself sufficient to permit the exercise of personal jurisdiction, see PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997); Ehrenfeld v. Mahfouz, 489 F.3d 542, 548 (2d Cir. 2007), the numerous cease and desist letters that Defendant

12

sent to Plaintiff's Connecticut offices merely add to Defendant's Connecticut-related activity. The totality of Defendant's conduct in operating an interactive, commercial website, selling its product to Connecticut residents and directing cease and desist letters towards Plaintiff's Connecticut offices constitutes purposeful availment. See Huntco Supply, LLC v. Starlite Media, LLC, No. 07-CV-401-BR, 2007 WL 4570818, at *7 (D.Or. Dec. 20, 2007) (holding that when a defendant sends cease and desist letters to a state forum alleging patent infringement and sells its patented product in the forum state, it has sufficient contacts to establish jurisdiction). However, the Court also notes that Defendant's interactive, commercial website is sufficient on its own to establish purposeful availment. See Mashantucket Pequot Tribe, 309 F.Supp.2d at 318. Defendant has the requisite minimum contacts with Connecticut and has purposefully availed itself of the privilege of doing business in Connecticut, so as to support the exercise of personal jurisdiction over it.

### 2. Reasonableness

The next step in the constitutional due process inquiry is for the Court to consider the minimum contacts discussed above in conjunction with other factors to determine whether exercising personal jurisdiction over the defendant would "offend the traditional notions of fair play and substantial justice." Divicino, 129 F.Supp.2d at 434 (citations omitted). Personal jurisdiction must be reasonable given the facts of the particular case. Id. (quoting Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir.1996) (citing Int'l Shoe, 326 U.S. at 316)). The Court evaluates the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most

efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  Id. (quoting Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 568).  Once minimum contacts have been established, Defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Johnsen, 526 F.Supp.2d at 314.  "Plaintiff's choice of forum is entitled to substantial consideration." Id.  "Unless the balance is strongly in favor of defendant, the plaintiff's choice of forum should rarely be disturbed." Id. (quotations omitted).

Defendant contends that subjecting it to personal jurisdiction in Connecticut would impose a significant burden on it because of the time and expense of having to travel cross-country when the majority of the witnesses and documents are in California, and where the evidence at trial will be about the validity of Defendant's mark.  However, "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." Metro. Life Ins. v. Robertson Ceco-Corp., 84 F.3d 560, 560 (2d Cir. 1996); Knauss v. Ultimate Nutrition, Inc., 514 F.Supp.2d 241, 249 (D. Conn. 2007).  Furthermore, Plaintiff intends to rely on company witnesses and third party witnesses located in Connecticut and the surrounding area.  (Pl.'s Am. Mem. in Opp'n of Mot. to Dismiss or Transfer at 22.) There is no evidence that Defendant will be subjected to undue hardship by defending this suit in Connecticut.  "Inconvenience must be substantial to achieve constitutional magnitude." Burger King, 471 U.S. at 483.  Defendant has not made a "compelling case" that its inconvenience in trying the case in Connecticut would be substantial. Johnsen, 526 F.Supp.2d at 314.

The court must also consider the interests of the forum state in resolving the case.  The case involves a state statute, CUTPA, in which Connecticut has an interest.  See Divicino, 129 F.Supp.2d at 435; Inset Sys., Inc. v. Instruction Set, Inc., 937 F.Supp. 161, 165 (D. Conn. 1996).

14

Connecticut has an interest in providing a forum for its companies to obtain convenient relief from injuries allegedly inflicted by foreign defendants. See Johnsen, 526 F.Supp.2d at 315; Burger King, 471 U.S. at 473; Milne, 239 F.Supp.2d at 206. Additionally, as Defendant is a large, national corporation, it should expect to be sued anywhere that it has customers.[5] "It is reasonable for a corporation deriving substantial revenue from interstate commerce, like defendant, to anticipate that its efforts to serve a market with a particular product may subject it to suit there . . . even if those efforts have not resulted in much revenue in that market." American Network v. Access Am./Connect Atlanta, 975 F. Supp. 494, 500 (S.D.N.Y. 1997). Defendant could have avoided Connecticut suits by "severing its connection with the state,"[6] see World-Wide Volkswagen, 444 U.S. at 297, but chose instead to inform customers that "[they] may order from any state." (Am. Levensohn Aff., Ex. 1, Wine of the Month Club Website.)

Another factor to consider is Plaintiff's interest in obtaining convenient and effective relief. "The plaintiff's choice of forum is the best indicator of his own convenience." Johnsen, 526 F.Supp.2d at 315; Milne, 239 F.Supp.2d at 206. Plaintiff indicates that Connecticut would be convenient because Plaintiff is based in Connecticut, and its marketing, advertising, and financial documents are located here. (Pl.'s Am. Mem. in Opp'n to Mot. to Dismiss or Transfer at 22-23.)

---

[5] See Maruzen Intern., Co., Ltd. v. Bridgeport Merchandise, Inc., 770 F.Supp. 155, 160 (S.D.N.Y. 1991) (holding that even defendant's mere attendance, solicitation, and receipt of sales orders at a toys and gifts fair demonstrates an expectation of sales to consumers and entrance into the stream of commerce and permitting personal jurisdiction over defendant); Am. Network, Inc. v. Access Am./Connect Atlanta, Inc., 975 F. Supp. 494, 498-99 (S.D.N.Y. 1997) (holding that when defendant published the statements on its home page that it can help customers "across the U.S.," it was foreseeable that it might be haled into court to defend itself in a jurisdiction where it secured customers and sent them materials, provided services to them, and received payment from them).

[6] "Interstate manufacturers and distributors. . .can act to limit the states in which their products will be sold thus structuring their primary conduct to provide some minimum assurance as to where that conduct will and will not render them liable to suit ...." City of New York v. A-1 Jewelry & Pawn, 247 F.R.D. 296, 334 (E.D.N.Y. 2007).

15

With regard to the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, both Defendant and Plaintiff maintain that they have witnesses and evidence in their home states. (Def.'s Mem. in Support of Mot. to Dismiss or Transfer at 14; Pl.'s Am. Mem. in Opp'n to Mot. to Dismiss or Transfer at 22.) When witnesses and evidence are in both the forum state and other locations, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy is neutral.  See Knauss, 514 F.Supp.2d at 249; Estate of Patricia Metzermacher v. Nat'l R.R. Passenger Corp., 570 F.Supp.2d 292, 301 (D. Conn. 2008).

 As Defendant has not made a compelling argument that its burden in litigating the case in Connecticut would be significant, the exercise of personal jurisdiction over it in Connecticut comports with due process.  Therefore, Defendant's motion to dismiss for lack of jurisdiction is denied.

## IV.   VENUE

### A.  28 U.S.C. § 1391

Defendants argue that this action should be dismissed for improper venue under 28 U.S.C. § 1391(b)(2), which provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in ...(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

(Def.'s Mem. in Support of Mot. to Dismiss or Transfer at 13.)  Defendant contends that since none of the events giving rise to the claim occurred in Connecticut and no property that is the subject of the action is located in Connecticut, venue is improper. (Id.)  However, as Plaintiff is based in Connecticut, its property, including its marketing records and other business information related to this action, is located here, which makes venue proper.  See Argent Funds Group, LLC

16

v. Schutt, Civ. No. 3:05CV01456 (SRU), 2006 WL 2349464, at *2 (D. Conn. June 27, 2006) (holding that venue was proper in Connecticut under § 1391(b)(2) because plaintiff's property, confidential business information, was located on file servers there).

Further, the Court has already determined that it may exercise personal jurisdiction over Defendant in Connecticut. "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). "Essentially § 1391(c) equates jurisdiction with venue for corporate defendants." Johnsen, 526 F.Supp.2d at 316 (quoting Divicino, 129 F.Supp.2d at 435). Therefore, because Defendant is a corporation and is subject to personal jurisdiction in Connecticut, it resides here for the purpose of this action and venue is proper in this district.

**B.    28 U.S.C. § 1404(a)**

Defendant moves for a transfer of this case to the Central District of California under 28 U.S.C. § 1404(a). Defendant submits that since Plaintiff's trademark claim will be entirely focused on Defendant's commercial activities and its trademarks, and the majority of the witnesses and documents are located in California, the case should be transferred to California. (Def.'s Mem. in Support of Mot. to Dismiss or Transfer at 14-18.) Plaintiff argues that Defendant has not made a convincing showing that the balance of convenience favors Defendant's choice of forum, particularly in light of modern technology. (Pl.'s Am. Mem. in Opp'n to Mot. to Dismiss or Transfer at 24-28.) Plaintiff also emphasizes Connecticut's connections to and interest in the action, including the CUTPA claim, and courts' traditional deference to the plaintiff's choice of venue. (Id.) The Court declines to transfer this action to the Central District of California.

17

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have considerable discretion in "making determinations of convenience under § 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). Some of the factors courts consider on a § 1404(a) motion are:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses; and (7) the relative means of the parties.[7]

Johnsen, 526 F.Supp.2d at 317 (quoting D.H. Blair, 462 F.3d at 106). The court can also consider "a forum's familiarity with the governing law; . . . trial efficiency; and . . . the interest of justice." Broad. Mktg., 345 F.Supp.2d at 1064. The moving party bears the burden of establishing a strong case for transfer. Id. at 1064, n.10. "A plaintiff's choice of forum is presumptively entitled to substantial deference" and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gross v. BBC, 386 F.3d 224, 230 (2d Cir. 2004).

Defendant fails to meet its burden in proving that inconvenience and fairness favor its choice of forum. While Defendant is correct in noting that the presumption in favor of a plaintiff's choice of forum does not apply in declaratory judgment actions to decide enforceability or validity when there is a tenuous material connection between the chosen forum and the issues of the case (Def.'s Mot. in Support of Mot. to Dismiss or Transfer at 16), here a material connection exists.

---

[7]Defendant acknowledges that these factors, submitted by Plaintiff, are substantially similar to the factors set forth by the Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), on which Defendant relies to argue that the balance of private and public interests favors transferring the case to California. Defendant balances the determinations used by the Court in deciding a *forum non conveniens* motion in Telephone Sys. Int'l, Inc. v. Network Telecom PLC, 303 F. Supp. 2d 377 (S.D.N.Y. 2003) with the Gilbert factors to make its argument.

Plaintiff is located in Connecticut and suffered the alleged economic injury there. The case

involves a state statutory claim. Additionally, Defendant directed the cease and desist letters to

Plaintiff's Connecticut offices. Therefore, Plaintiff's choice of forum is entitled to deference.

Furthermore, while Defendant contends that the majority of the likely third-party witnesses

are located in California (Def.'s Mem. in Support of Mot. to Dismiss or Transfer at 14), Plaintiff

states that it intends to rely on at least seven Connecticut witnesses. (Am. Levensohn Aff. 5.)

However, "it is not the prospective number of witnesses in each district that determines the

appropriateness of a transfer, but, rather, the materiality of their anticipated testimony." Zinky

Electronics, LLC v. Victoria Amplifier Co., Civ. No. 09-cv-26 (JCH), 2009 WL 2151178, at *5

(D. Conn. June 24, 2009) (quoting Schwartz v. Marriott Hotel Servs., Inc., 186 F.Supp.2d 245, 249

(E.D.N.Y.2002)). At this point in the litigation, the Court cannot evaluate the materiality of either

party's potential witnesses, and this factor is neutral. Similarly, Plaintiff's documents are in

Connecticut (Pl.'s Am. Mot. in Opp'n to Mot. to Dismiss or Transfer at 26), while Defendant's

documents are in California (Def.'s Mem. in Support of Mot. to Dismiss or Transfer at 14.)

Modern technology, such as e-mail, facsimile, expedited mailing services and electronic storage

and transfer techniques "deprive [the issue of location of relevant documents] of practical or legal

weight." See Roller Bearing Co. v. Am. Software, Inc., 570 F.Supp.2d 376, 390 (D. Conn. 2008);

Hawley v. Accor North Am., Inc., 552 F.Supp.2d 256, 259 (D. Conn. 2008). One party in this

case will have to travel to litigate in an out-of-state forum, and granting a motion to transfer should

not merely "shift the burden of inconvenience from one party to the other." Pitney Bowes, Inc. v.

Nat'l Presort, Inc., 33 F.Supp.2d 130, 132 (D. Conn.1998). The locus of operative facts weighs in

favor of Plaintiff due to the aforementioned material connection between Connecticut and the

issues of the case. See Foot Locker, 2005 WL 91306, at *10 (holding that operative facts were not

19

centered in defendant's home state of Missouri when defendant's communications with plaintiff and another party regarding trademarks were directed at or actually took place in New York). Finally, Defendant has not proven that its third party witnesses would be unwilling to testify voluntarily in Connecticut, if they cannot be compelled to do so.  Because Defendant has not demonstrated that the balance of convenience weighs in its favor, its § 1404(a) motion to transfer is denied.

## VI.  Connecticut Unfair Trade Practices Act Claim

Defendant also moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Connecticut Unfair Trade Practices Act ("CUTPA") claim, Conn. Gen. Stat. § 42-110a *et seq.*  The function of a motion to dismiss pursuant to Rule 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence that might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (citation omitted).  Therefore, when considering such a motion, the court must accept the facts alleged in the complaint as true, draw inferences therefrom in the light most favorable to the plaintiff, and construe the complaint liberally. Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).

The district court may dismiss a claim under Rule 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1960 (2007).  Although detailed factual allegations are not required, a plaintiff must provide the grounds of entitlement to relief beyond mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65.  In ruling on a 12(b)(6) motion, the Court may consider only the allegations made in the complaint, documents attached to the complaint, documents incorporated into the complaint by reference, and any facts of which judicial notice may be taken. See Newman & Schwartz v.

20

Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996); Brass v. Amer. Film Techn., Inc.,

987 F.2d 142, 150 (2d Cir. 1993).

    The Connecticut Unfair Trade Practices Act provides that "[n]o person shall engage in unfair

methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce."  Conn. Gen. Stat. § 42-110b(a).  A plaintiff must satisfy two requirements to prevail

on a CUTPA claim.  Chem-Tek, Inc. v. General Motors Corp., 816 F. Supp. 123, 130 (D. Conn.

1993).  First, it must establish conduct that constitutes an unfair or deceptive trade practice.  Id.

Second, the plaintiff must establish a basis for a reasonable estimate of damages.  Id.  To

determine if the alleged conduct violates CUTPA, one must consider:

> (1) Whether the practice, without necessarily having been previously considered
> unlawful, offends public policy as it has been established by statutes, the common
> law, or otherwise - whether, in other words, it is within at least the penumbra of
> some common law, statutory, or other established concept of unfairness; (2)
> whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes
> injury to consumers [competitors or other businessmen].

Bruce v. Home Depot, U.S.A., Inc., 308 F.Supp.2d 72, 77 (D. Conn. 2004).  "A practice may be

unfair because of the degree to which it meets one of the criteria or because, to a lesser extent, it

meets all three." Cheshire Mortgage Serv., Inc. v. Montes, 223 Conn. 80, 106, 612 A.2d 1130

(1992).  CUTPA is "remedial in character . . . and must be liberally construed in favor of those

whom the legislature intended to benefit." Titan Sports, Inc. v. Turner Broad. Sys., Inc., 981 F.

Supp. 65, 71 (D. Conn. 1997).  "There is no . . . unfair method of competition, or unfair [or]

deceptive act or practice that cannot be reached [under CUTPA]." Associated Inv. Co. Ltd. P'ship

v. Williams Assocs. IV, 230 Conn. 148, 158 (1994) (internal quotation and citations omitted).

    Plaintiff alleges that Defendant's practice of sending baseless cease and desist letters and

interfering with Plaintiff's ability to market their own wine clubs, when Defendant knows that use

of the phrases "wine of the month" and "wine of the month club" are rampant and generic, is unfair

and unscrupulous conduct in violation of CUTPA. (Pl.'s Am. Mem. in Opp'n to Mot. to Dismiss or

Transfer at 29.)   Defendant claims that its truthful statements in informing Google and Yahoo of its

trademark registrations do not amount to an unfair trade practice or deceptive behavior. (Def.'s

Mem. in Support of Mot. to Dismiss or Transfer at 20.)  That issue is not appropriately resolved on

a Motion to Dismiss.  Defendant also argues that Plaintiff has not alleged that actions giving rise to

its claim occurred in Connecticut because neither Defendant nor the internet search engines that

Defendant contacted regarding Plaintiff's ads are located in Connecticut.  (Def.'s Mem. in Support

of Mot. to Dismiss or Transfer at  21.)  However, a CUTPA violation "need not necessarily occur in

Connecticut, but instead, the violation must 'be tied to a form of trade or commerce intimately

associated with Connecticut.'" Country Club Assocs. v. Shaw's Supermarkets, Inc., 2009 U.S. Dist.

LEXIS 45836 (D. Conn. May 29, 2009) (quoting Titan Sports, 981 F.Supp. at 71).  See also

Richmond Fredericksburg & Potomac R.R. Corp. v. AETNA Casualty & Surety Co., No.

3:96CV1054, 1997 WL 205783, at *2 (D. Conn. Apr. 11, 1997) (holding that Virginia-based

plaintiffs had sufficiently stated a CUTPA claim when their Connecticut-based insurers had

declined to subsidize, investigate, or attempt to settle their alleged Virginia-based environmental

liabilities); Titan Sports, 981 F.Supp. at 71-72 (holding that plaintiff's CUTPA claim was tied to a

form of trade or commerce "intimately associated" with Connecticut where defendants' allegedly

deceptive television and Pay-Per-View programs were broadcast in Connecticut, and Connecticut

residents had dialed defendants' 900-number telephone hotline, in addition to plaintiff's business

being located in Connecticut and sustaining its injury there); Conn. Pipe Trades Health Fund v.

Philip Morris, Inc., 153 F.Supp.2d 101, 107 (D. Conn. 2001) (holding that when defendants

advertised and sold cigarettes in Connecticut, and caused harm in Connecticut, and deceptive

information they broadcast in Connecticut had an economic impact on Connecticut funds, defendants' conduct was tied to trade or commerce intimately associated with Connecticut, despite the fact that much of the unfair and deceptive practices emanated from New York). In this case, Plaintiff is located in Connecticut and suffered its alleged economic injury there. (Am. Compl. ¶ 2, 77-78.) Additionally, Plaintiff has alleged that Defendant sells its products in Connecticut. (Am. Compl. ¶ 11.) Defendant directed at least four cease and desist letters to Plaintiff's Connecticut offices. (Am. Compl. ¶ 1.) Plaintiff's factual allegations sufficiently tie the alleged CUTPA violation to "trade or commerce intimately associated with Connecticut." Titan Sports, 981 F.Supp. at 71.

CUTPA "provides a private cause of action to any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a prohibited method, act, or practice." Indiaweekly.com, LLC v. Nehaflix.com, Inc., 596 F.Supp.2d 497, 507 (D. Conn. 2009); see also Pierce v. Emigrant Mortg. Co., 2005 WL 2406007, at *7 (D. Conn. Sept. 29, 2005); Titan Sports, 981 F.Supp. at 72, n 5. Plaintiff has alleged that it suffered damages and an ascertainable loss as a result of Defendant's interference with Plaintiff's ability to advertise its products through Google and Yahoo. (Am. Compl. ¶ 78.) ("Plaintiff has suffered damages in the form of, among other things, lost revenue, lost business opportunities, and damage to its reputation and that of the products and services it offers for sale.") Plaintiff's allegations of a CUTPA violation are sufficient to survive a motion to dismiss.

## VI. CONCLUSION

For the foregoing reasons, Defendant Wine of the Month Club's Motion to Dismiss or Transfer [Doc. No. 8] is **denied.**

SO ORDERED.

Dated at New Haven, Connecticut, this 24th day of August, 2009.

/s/_____
Peter C. Dorsey, U.S. District Judge
United States District Court