Martin J. Murray
Leza M. DiBella (admitted *pro hac vice*)
LAW OFFICES OF MARTIN J. MURRAY
475 Park Avenue South, 25th Floor
New York, NY 10016
Telephone: 212-725-2044
Facsimile: 212-725-1145
E-mail: lawoffices@martinjmurray.com

*Attorneys for Plaintiff ICG America, Inc. and*
*Additional Counterclaim Defendant Peter Levensohn*

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

ICG AMERICA, INC. (d/b/a "FLYING
NOODLE," "AMAZING CLUBS," AND
"CALIFORNIA REDS"),                                        Case No. 3:09-cv-00133 (PCD)

        Plaintiff and
        Counterclaim Defendant,

    - against -

WINE OF THE MONTH CLUB, INC.,

        Defendant and.
        Counterclaim Plaintiff,

    - against –

PETER LEVENSOHN,

        Additional Counterclaim
        Defendant.

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## ICG AMERICA INC.'s and PETER LEVENSOHN's
## MOTION FOR SANCTIONS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND........................................... 2

ARGUMENT ................................................................................... 4

   A. Legal Standards Governing Sanctions Motions ......................................... 4

      1. 28 U.S.C. § 1927 Provides For Sanctions For Bad Faith Conduct............ 5

      2. This Court Has Inherent Authority To Issue Sanctions ........................... 5

   B. Sanctions Have Particular Significance In The Civil RICO Context........... 6

   C. Sanctions Are Appropriate Based On Defendant's Assertion Of A
      Legally Untenable RICO Claim For An Entirely Improper Purpose .......... 7

      1. Under Well-Settled Precedent, It Is Clear That Defendant's RICO
         Claim Is Utterly Without Merit Because Defendant Lacks
         RICO Standing ......................................................................... 8

      2. Defendant Asserted the RICO Claim In Bad Faith For An
         Improper Purpose....................................................................... 11

      3. The Legal Fees Incurred By ICG And Levensohn As A
         Consequence Of Defendant's Bad Faith Assertion Of The Futile
         RICO Claim Should Be Reimbursed By Defendant................................. 12

   D. Defendant's False, Ungrounded And Inflammatory Pleading
      Should Be Sealed or Otherwise Removed From The Record...................... 14

   CONCLUSION................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

Anza v. Ideal Steel Supply Corp.,
  547 U.S. 451, 124 S.Ct. 1991 (2006)...................................................................... 8, 9, 11

Brewer v. Strillacci,
  No. 3:03cv127, 2004 WL 23511730 (D.Conn. June 4, 2003) ............................................ 5

Chambers v. NASCO,
  501 U.S. 32, 111 S.Ct. 2447 (1991)............................................................................ 5, 12

Doctor's Assoc. Inc. v. QIP Holders LLC,
  No. 3:06cv1710, 2007 WL 2782516 (D.Conn., Sept. 24, 2007) ...................................... 14

Durant v. Traditional Investments, Ltd.,
  135 F.R.D. 42 (S.D.N.Y. 1991)....................................................................................... 13

Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago,
  747 F.2d 384 (7th Cir. 1984), cert. denied, 473 U.S. 606, 105 S.Ct. 3291 (1985) .............. 7

Hoatson v. New York Archdiocese,
  No. 05 Civ. 10467, 2007 WL 43109 (S.D.N.Y. Feb. 7, 2007) .......................................... 7

Holmes v. Securities Investor Protection Corporation,
  503 U. S. 258, 112 S.Ct. 1311 (1992)............................................................................ 8, 9

Hudson Motors Partnership v. Crest Leasing Enterprises, Inc.,
  845 F.Supp. 969 (S.D.N.Y. 1994)............................................................................... 11, 12

International Data Bank, Ltd. v. Zepkin,
  812 F.2d 149 (4th Cir. 1987) .............................................................................................. 7

Katzman v. Victoria's Secret Catalogue,
  167 F.R.D. 649 (S.D.N.Y. 1996), aff'd, 113 F.3d 1229 (2d Cir. 1997) ................... 6, 7, 15

Kirk v. Heppt,
  423 F. Supp. 2d 147 (S.D.N.Y. 2006)........................................................................... 6, 15

Lerner v. Fleet Bank, N.A.,
  459 F.3d 273 (2d Cir. 2006) .............................................................................................. 4

Levy v. Aaron Faber, Inc.,
  148 F.R.D. 114 (S.D.N.Y.1993). ....................................................................................... 7

McLoughlin v. Altman,
  No. 92 Civ. 8106, 1995 WL 640770 (S.D.N.Y. October 31, 1995) ................................... 7

Mickle v. Morin,
  297 F.3d 114 (2d Cir. 2002)............................................................................................... 5

Mon-Shore Management, Inc. v. Family Media, Inc.,
  584 F.Supp. 186 (S.D.N.Y. 1984)...................................................................................... 6

Nadler v. Princess Hotels, Intern., Inc.,
  No. 94 Civ 6986, 1996 WL 219639 (S.D.N.Y), aff'd, 129 F.3d 114 (2d Cir. 1997) ........ 13

NatTel LLC v. SAC Capital Advisors,
  No. 3:04 CV 1061, 2005 WL 225356 (D. Conn Sept. 15, 2005) ..................................... 11

Nixon v. Warner Communications, Inc.,
  435 U.S. 589, 98 S.Ct. 1306 (1978)............................................................................ 14, 15

O'Malley v. New York City Transit Authority,
  896 F.2d 704 (2d Cir. 1990)............................................................................................... 7

Oliveri v. Thompson,
  803 F.2d 1265 (2d Cir. 1986) ............................................................... 5, 8, 12
Revson v. Cinque & Cinque, P.C.,
  221 F.3d 71 (2d Cir. 2000) ............................................................... 5, 6, 8, 11
S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.,
  84 F.3d 629 (2d Cir. 1996) ..................................................................... 4
Salovaara v. Eckert,
  222 F.3d 19 (2d Cir. 2000) ............................................................... 5, 8, 11
Sussman v. Bank of Israel,
  56 F.3d 450 (2d Cir.), cert. denied, 516 U.S. 916, 116 S. Ct. 305 (1995) ......................... 6
U.S. for Use and Benefit of Evergreen Pipeline Const Co., Inc.
  v. Merritt Meridian Const. Corp.,
  890 F. Supp. 1213 (S.D.N.Y. 1995),
  aff'd in part, rev'd in part on other grounds, 95 F.3d 153, 159, 171 (2d Cir. 1996) ............ 7

**Statutes**
18 U.S.C. § 1962 ............................................................................. passim
28 U.S.C. § 1927 ............................................................................. passim

**Rules**
Rule 5(e) of the Local Rules of the
  United States District Court for the District of Connecticut ............................... 14

## PRELIMINARY STATEMENT

Several weeks ago in this trademark dispute, Plaintiff received a settlement invitation that was enveloped in the threat of a RICO counterclaim.  Essentially, Defendant warned that if the case were not settled, Defendant would assert a RICO counterclaim when answering the complaint that had been served against it.  Plaintiff did not succumb to this threat and, as threatened, Defendant responded by asserting in its answer a RICO claim against Plaintiff and its Chief Operating Officer.  Plaintiff again did not succumb, but instead immediately began drafting motion papers to dismiss the frivolous RICO claim.  Even before the Plaintiff finished and submitted its motion to dismiss, the patent deficiency of the claim was confirmed by Defendant's abrupt about-face, unilateral withdrawal of the claim in an amended pleading.  The withdrawal of this specious claim, however, came only after the Plaintiff was forced to incur considerable legal expense for researching and drafting its motion to dismiss.  Plaintiff now seeks as sanctions the costs of those efforts, as well as the withdrawal from the docket of the slanderous pleading.

It's clear that, having failed to coerce settlement with its threat of RICO charges, Defendant simply upped the ante by filing the legally untenable claim, waiting ten days to see if it could strong-arm the desired result, and then withdrawing it before it drew Rule 11 scrutiny.  It is respectfully submitted that this Court should not tolerate such blatant misconduct, which warrants the imposition of sanctions under 28 U.S.C. § 1927 and/or the Court's inherent authority.  The seriousness of invoking judicial process to charge another with any form of racketeering activity calls for the most diligent care in ascertaining whether there is a legal and factual basis for a RICO claim.  The Court's authority to impose sanctions for the failure to do so helps assure that the profession is held to an appropriately

demanding standard with respect to its duty of inquiry and that counsel and parties are particularly mindful to proceed in good faith in this area of the law.

A reasonable inquiry would have revealed that Defendant did not have the right to seek relief under RICO based on the law and the facts alleged in the counterclaims. Defendant and its counsel were either reckless in filing a RICO claim prior to determining whether it had any merit … or they knowingly filed a claim that had no chance of success. Either conduct must not be countenanced.  The imposition of sanctions is appropriate because defendant and its counsel filed a RICO claim that is utterly without merit for the improper and bad faith purposes of coercing a settlement, disparaging its adversaries and causing them to incur significant legal expenses to respond to the claim, and, perhaps most damaging, making a public record of its RICO accusations – the proverbial bell which cannot be un-rung.

## FACTUAL AND PROCEDURAL BACKGROUND

ICG America, Inc. ("ICG") commenced this action on January 27, 2009 against Wine of the Month Club, Inc. ("Defendant" or "WoMC"), and on May 19, 2009, filed a Amended Complaint seeking (i) declarations that Defendant's registered "Wine of the Month Club" and "Wine of the Month" trade and service marks are invalid, and that ICG is not liable for infringement or unfair competition with respect to those marks; and (ii) damages under the Connecticut Unfair Trade Practices Act ("CUTPA").  Affirmation of Leza DiBella, sworn to October 27, 2009 ("DiBella Aff."), at ¶ 3.

On September 9, 2009, just days before its answer to the amended complaint was due, Defendant's counsel suggested during a telephone conversation that ICG should

consider settlement because, if the action were not settled prior to the date Defendant's

answer was due, Defendant intended to assert a RICO counterclaim in its Answer.  ICG

declined to succumb to Defendant's strong-arm tactics.  As threatened, on September 17,

2009, Defendant filed and served its Answer, Counterclaims and Cross-claims

("Defendant's Original Pleading").  Defendant's Original Pleading asserted claims against

ICG and its Chief Operating Officer Peter Levensohn, a non-party, under the Lanham Act,

CUTPA, common law unfair competition laws and the Civil RICO statute, 18 U.S.C. §

1962, *et seq.*  Id. ¶ 4.

Upon review of Defendant's Original Pleading, ICG and Levensohn directed their

counsel to research the RICO claim, which appeared on its face to be baseless.  Research

revealed, among other deficiencies, that under existing Supreme Court and Second Circuit

precedent, Defendant lacked standing to assert a RICO claim against ICG and/or Levensohn.

Accordingly, counsel for ICG and Levensohn began to draft a motion to dismiss

Defendant's RICO cause of action, based on the clear absence of standing.  Other

deficiencies in its pleading further demonstrate that Defendant was not and could not have

been serious about pursuing this claim.[1]  Id. ¶ 5.

---

[1]  For example:

1.  RICO, 18 U.S.C. §1962, contains four subdivisions requiring proof of distinct elements to establish a substantive RICO violation.  The Counterclaim fails to even allege which of the four subdivisions ICG and Levensohn allegedly violated.  Nor does it specifically reference Section 1962.  Instead, it merely alleges that the claims are brought pursuant to "the Civil RICO Act, 18 U.S.C. § 1962 *et seq.*" (Defendant's Original Pleading, ¶73; see also id. ¶¶ 7,12, 13, 14 and 15).

2.  The Counterclaim fails to identify either the specific state statutes (the "state wine laws") or even the states whose statutes ICG and Levensohn allegedly violated to engage in racketeering activity.

3.  Although the Counterclaim alleges that ICG and Levensohn engaged in racketeering by violating state wine laws, violating such state laws does not fall within RICO's definition of racketeering and cannot alone give rise to a substantive RICO violation.

4.  The Counterclaim contains only a bald assertion and the legal conclusions that ICG and Levensohn committed mail and/or wire fraud. (Id., ¶ 77.)

Plaintiff never responded to Defendant's settlement overture, but instead spent its time researching and drafting its motion to dismiss, which was due on October 13. Before that motion could be filed, however, on the afternoon of September 28, Defendant's Counsel *sua sponte* filed and served an Amended Answer, Counterclaims and Cross-claim ("Defendant's First Amended Pleading") which abandoned the RICO claim.[2] Accordingly, all work on the motion to dismiss the RICO claim ceased immediately, but that was not before Plaintiff incurred over $10,000 in legal fees researching and drafting the motion to dismiss. Contemporaneous time keeping records reflect the amount and nature of the work that was dedicated to researching and drafting the motion. Id. ¶¶ 5 - 6.

## ARGUMENT

### A.    Legal Standards Governing Sanctions Motions

As this Court has explained,

Sanctions may be levied in response to a party's actions undertaken in bad faith leading to a lawsuit or in the conduct of the litigation or an attorney's negligent or reckless failure to perform his or her responsibilities as an officer of the court. *See Wilder v. GL Bus Lines,* 258 F.3d 126, 130 (2d Cir.2001). In

---

5. The Counterclaim does not even cite to the federal mail and wire fraud statutes that it alleges ICG and Levensohn violated to engage in racketeering activity.

6. The Counterclaim fails to identify or allege, much less support with factual allegations, the elements necessary to establish violations of the federal mail and wire fraud statutes: (1) the existence of a scheme to defraud, (2) defendant's knowledge or intentional participation in that scheme and (3) the use of interstate mails or transmission facilities to further the scheme. See, e.g., S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996).

7. The Counterclaim fails to: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. All of these elements are required by applicable Second Circuit precedent in order to plead a claim for fraud (including mail and wire fraud) with the particularity required by Fed. R. Civ. P. 9(b). See, e.g., Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).

DiBella Aff. ¶ 5.

[2] Plaintiff's Original Pleading and Plaintiff's First Amended Pleading erroneously identified Levensohn as "cross-claim defendant." On October 8, 2009, Defendant's Counsel filed and served a Second Amended Complaint correcting Levensohn's designation to "additional counterclaim defendant." DiBella Aff. ¶ 1 and footnote.

the appropriate circumstances, either an attorney or a party may be subject to sanctions. *See United States v. Int'l Bhd. of Teamsters,* 948 F.2d 1338, 1343-44 (2d Cir.1991).

Brewer v. Strillacci, No. 3:03cv127, 2004 WL 23511730, 1 -2  (D.Conn. June 4, 2003).

### 1.    28 U.S.C. § 1927 Provides For Sanctions For Bad Faith Conduct

Pursuant to statute, the Court may impose sanctions upon an attorney "who multiplies the proceedings in any case unreasonably and vexatiously" by imposing personal liability for "excess costs, expenses, and attorney' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.  Bad faith, an essential finding under Section 1927, may be inferred if the actions in question "are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose …." E.g., Salovaara v. Eckert, 222 F.3d 19, 35 (2d Cir. 2000); BB Energy Mgmt. S.A. v. AmSpec. Svcs., LLC, No. 3:09-cv-526, 2009 WL 3128459, 2-3 (D. Conn. Sept. 28, 2009).

### 2.    This Court Has Inherent Authority To Issue Sanctions

The Court also may call upon its inherent authority "to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct." Mickle v. Morin, 297 F.3d 114, 125 (2d Cir. 2002); see also Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000) (sanctions may be levied against party or its counsel who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (internal quotation marks and citation omitted); Chambers v. NASCO, 501 U.S. 32, 111 S.Ct. 2447 (1991).  The Court may invoke its inherent power appropriately where clear evidence demonstrates that "the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes." Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986) (internal quotation marks and citation omitted), cert. denied, 480 U.S. 918, 107 S.Ct.

5

1373 (1987).  A court's inherent power is broader than Rule 11 and may properly include a

consideration of related bad faith conduct prior to the commencement of the challenged

litigation.  Sussman v. Bank of Israel, 56 F.3d 450, 459 (2d Cir.), cert. denied, 516 U.S. 916,

116 S. Ct. 305 (1995).

      The imposition of sanctions either under Section 1927 or through exercise of the

Court's inherent authority is proper when there is (i) clear evidence that a party's claims are

without merit and (ii) the party acted for improper purposes.  Revson, 221 F.3d at 79.  Both

prerequisites are satisfied in the present case.

**B.**     **Sanctions Have Particular Significance In The Civil RICO Context**

      This Court has recognized that sanctions have particular significance in the Civil

RICO context because the quasi-criminal nature of the statute "is an unusually potent

weapon - the litigation equivalent of a thermonuclear device," the use of which has "'an

almost inevitable stigmatizing effect on those named as defendants.'"  Katzman v. Victoria's

Secret Catalogue, 167 F.R.D. 649, 660 (S.D.N.Y. 1996) (quoting Miranda v. Ponce Federal

Bank, 948 F.2d 41, 44 (1st Cir. 1991) and Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st

Cir. 1990)), aff'd, 113 F.3d 1229 (2d Cir. 1997); Kirk v. Heppt, 423 F. Supp. 2d 147, 150

(S.D.N.Y. 2006).  There is wide recognition that the negative implications to a RICO

defendant are serious and considerable:  the mere threat of a civil RICO claim creates an *in*

*terrorem* settlement value and the filing of a claim makes a public record of alleged facts

that are highly disparaging and injurious to reputation.  See, e.g., Mon-Shore Management,

Inc. v. Family Media, Inc., 584 F.Supp. 186, 194 (S.D.N.Y. 1984) ("'Plaintiffs can boost the

settlement value of a case by including a RICO claim because RICO gives them a tool for

intimidation.'") (quoting 18 Georgia L. Rev 43 (1983)); see also, International Data Bank,

Ltd. v. Zepkin, 812 F.2d 149, 153 (4th Cir. 1987) ("This circuit has been especially sensitive

to the disruption of business activity by lawsuits designed to poison the atmosphere with

accusations of fraud and thereby exploit meritless claims for their settlement value")

(internal quotation marks and citation omitted); Haroco, Inc. v. American Nat. Bank and

Trust Co. of Chicago, 747 F.2d 384, 399 (7th Cir. 1984) ("A number of courts dismayed by

civil RICO have commented on the *in terrorem* settlement value that the threat of treble

damages may add to spurious claims"), cert. denied, 473 U.S. 606, 105 S.Ct. 3291 (1985).

Accordingly, numerous courts have concluded that sanctions are appropriate means

by which to deter the filing of frivolous and unfounded RICO claims.  See, e.g., O'Malley v.

New York City Transit Authority, 896 F.2d 704 (2d Cir. 1990); U.S. for Use and Benefit of

Evergreen Pipeline Const Co., Inc. v. Merritt Meridian Const. Corp., 890 F. Supp. 1213,

1225-28 (S.D.N.Y. 1995), aff'd in part, rev'd in part on other grounds, 95 F.3d 153, 159,

171 (2d Cir. 1996);  Hoatson v. New York Archdiocese, No. 05 Civ. 10467, 2007 WL

43109, 9-10 (S.D.N.Y. Feb. 7, 2007); Katzman, 167 F.R.D. at 660; McLoughlin v. Altman,

No. 92 Civ. 8106, 1995 WL 640770, 2 (S.D.N.Y. October 31, 1995); Levy v. Aaron Faber,

Inc., 148 F.R.D. 114, 123 (S.D.N.Y. 1993).

**C.     Sanctions Are Appropriate Based On Defendant's Assertion Of A Legally
        Untenable RICO Claim For An Entirely Improper Purpose**

The lack of merit in Defendant's RICO claim is as evident as the reasonable and

obvious inference that Defendant withdrew the claim so that its certain failure would not be

sanctioned under Rule 11.  Although on notice via clear Supreme Court precedent that it

lacked standing to assert the RICO counterclaim, Defendant nevertheless proceeded with its

allegations of racketeering activities against ICG and Levensohn.  As discussed below, this

is not a case in which there is some question as to the viability of RICO standing based on

causal attenuation between the alleged violations and the claimed injury.  Rather, Defendant's claim is marked by the precise causal discontinuity that the Supreme Court pronounced inadequate to confer standing.  See, e.g., Oliveri, 803 F.2d at 1272 (sanctions appropriate where challenged actions are "without color" and undertaken for improper purpose).

The utter lack of merit in Defendant's RICO claim leads unequivocally to the conclusion that it was asserted in bad faith for the improper purpose of extorting a settlement from ICG and Levensohn, inflicting reputational damage on them (a point which is particularly salient in light of the fact that ICG and Defendant are direct competitors in the sale of wine clubs), and distracting the Court from the true matter at issue - - the validity *vel non* of Defendant's purported trademarks.  See, e.g., Salovaara, 222 F.3d at 35 (inference of bad faith supported by actions devoid of merit).

     **1.**     **Under Well-Settled Precedent, It Is Clear That Defendant's RICO Claim Is Utterly Without Merit Because Defendant Lacks RICO Standing**

"A claim is colorable when it has some legal and factual support considered in light of the reasonable beliefs of the individual making the claim."  Revson, 221 F.3d at 79. Defendant's RICO claim is not colorable.

A review of the well-settled United States Supreme Court authority stated Anza v. Ideal Steel Supply Corp., a case directly on point, leads to the inescapable conclusion that Defendant has no right to assert a RICO claim against ICG or Levensohn based on the facts and circumstances alleged in the Counterclaims.  See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457, 124 S.Ct. 1991, 1996 (2006); Holmes v. Securities Investor Protection Corporation, 503 U. S. 258, 268, 112 S.Ct. 1311, 1317-18 (1992).  Anza applies the proximate cause principles announced by the Supreme Court seventeen years ago in

Holmes, to a RICO claim that arose in a dispute between two competing businesses.  Anza, 547 U.S. at 43, 126 S. Ct. at 1994.  Thereunder, it is clear that the essential RICO element of causation – also called RICO standing – requires the claimant to show both that the RICO violation was the "but for" and the proximate cause of its injuries.  Id., 547 U.S. at 457, 124 S.Ct. at 1996; Holmes, 503 U. S. at 268, 112 S. Ct. at 1317-18.  The determinative question - - whether the alleged RICO violation led directly to the claimed injuries - - cannot plausibly be answered in the affirmative when Defendant's allegations are analyzed under Anza.  See Anza, 547 U.S. at 461, 126 S.Ct. at 1998.  Under Anza, the fatal flaw in Defendant's RICO claim is obvious.

In Anza, Ideal Steel sued its competitor, National, alleging that National was able to undercut Ideal Steel's prices and unfairly compete because it failed to pay certain New York State sales taxes.  Ideal Steel alleged that National violated RICO by committing mail and wire fraud when it submitted false tax returns to New York State.  The Supreme Court held that Ideal Steel lacked standing to assert its alleged RICO violations because National's mail and wire fraud – the alleged RICO violations – had not caused Ideal Steel's injuries, which were lost profits.  Rather, Ideal Steel's loss was caused by "a set of actions (offering lower prices) entirely distinct from the RICO violation (defrauding the State)."  Anza, 547 U.S. at 458, 126 S.Ct. at 1997.

In the present case, Defendant's RICO claim was predestined to fail as a matter of law under Anza because there is absolutely no causal connection between Defendant's alleged injuries and ICG and Levensohn's alleged RICO violations, *a fortiari*, there is no proximate causation.  Unable to articulate what damages Defendant suffered as a result of ICG's and Levensohn's allegedly criminal activities (because there are none), Count V of

Defendant's Original Pleading merely states in conclusory fashion that by allegedly shipping wine in violation of various unnamed states' unspecified laws, ICG and Levensohn "proximately caused damages to WoMC." (Defendant's Original Pleading, ¶ 77). The pleading does not identify or describe the purported damages or any theory, much less a legally cognizable theory, that links them to any alleged racketeering activities on the part of ICG or Levensohn.

Elsewhere in its pleading, Defendant alleges that ICG's and Levensohn's violation of "various state wine laws and shipping laws" results in a competitive disadvantage that in turn causes "a loss of revenues and profits" (Defendant's Original Pleading, ¶ 49)[3] and that "[i]t hurts WoMC's revenue stream not to be able to sell to the other states. However, WoMC respects the law" (id., ¶ 36). Defendant's independent decision to refrain from shipping its products to certain, unspecified states has absolutely nothing to do with conduct on the part of ICG or Levensohn, whether illegal or otherwise - - and both counterclaim defendants vigorously dispute that they have violated any laws.

The fact that ICG does business in states in which Defendant chooses not to do business does not result in any loss to Defendant since, obviously enough, Defendant has already elected not to do business there, and therefore there is simply no basis in the law upon which to conclude that Defendant has standing to assert a RICO claim against ICG or Levensohn. Yet, despite this clear U.S. Supreme Court pronouncement that "[a] RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the

---

[3]   "If Counter/Cross Claim Defendants are violating various state wine laws and shipping laws, those violations put WoMC at a severe competitive advantage [sic] and allow ICG to grow its business in ways that WoMC cannot and allow ICG to compete with WoMC unfairly in the states where WoMC does business. This, in turn, causes a loss of revenues and profits to WoMC and other legitimate wine retailers." (Defendant's Original Pleading, ¶ 49).

defendant's aim was to increase market share at a competitor's expense," <u>Anza</u>, 547 U.S. at 458, 126 S.Ct. at 1997, Defendant and its counsel asserted a highly inflammatory and damaging counterclaim based on that theory.  This is precisely the type of conduct that sanctions are intended to address.

>    **2.    Defendant Asserted The RICO Claim In Bad Faith For**
>    **An Improper Purpose**

In this case bad faith may be inferred because the actions of Defendant and its counsel are wholly without merit.  <u>See</u>, <u>e.g.</u>, <u>Salovaara</u>, 222 F.3d at 35.  This case is not akin to one wherein a threat to bring RICO litigation was excused because it arose from a misunderstanding of fact, which, once clarified, led its proponent to refrain from acting on the threat.  <u>Cf.</u> <u>Revson</u>, 221 F.3d at 81 (no sanctions imposed where factual misunderstanding was corrected and threatened RICO claim was not asserted) and <u>NatTel LLC v. SAC Capital Advisors</u>, No. 3:04 CV 1061, 2005 WL 225356 (D. Conn Sept. 15, 2005) (no sanctions imposed where RICO claim based on incorrect financial statement was withdrawn upon proof that statement was erroneous).  In the present case, clearly articulated, binding precedent demonstrates that there was no right to relief under RICO based on the facts and circumstances alleged, yet Defendant proceeded to advance the claim. It is appropriate to respond to such abusive litigation practice by levying sanctions.  <u>See</u>, <u>e.g.</u>, <u>Hudson Motors Partnership v. Crest Leasing Enterprises, Inc.</u>, 845 F.Supp. 969, 981-983 (S.D.N.Y. 1994) (imposing sanctions upon defendant and its counsel for baseless motion practice and for asserting counterclaim with no legal or factual justification, which was "therefore, made in bad faith and unreasonably and vexatiously multiplied these proceedings by forcing [plaintiff] to move for its dismissal").

Defendant and its counsel chose to follow a dead end route that is clearly marked on the Anza road map. Their abrupt reversal thereafter underscores the conclusion that the frivolous claim was asserted for improper tactical purposes rather than with any good faith expectation for recovery. To put it in practical terms, unless Defendant and its counsel somehow got significantly smarter in the ten days after they filed their RICO claim, they either knew their claim was baseless when they made it, or they were reckless in making it. And, when combined with the fact that the threat of the RICO claim was made in conjunction with an overture to address settlement, one would have to fall off a turnip truck to misunderstand the tactics Defendant was employing. Courts have frequently acknowledged the *in terrorem* settlement value created by the threat of a civil RICO claim. See Point B, supra. That is why sanctions are an appropriate remedy.

**3.    The Legal Fees Incurred By ICG And Levensohn As A Consequence Of Defendant's Bad Faith Assertion Of The Futile RICO Claim Should Be Reimbursed By Defendant**

As the Second Circuit explained, sanctions serve the purpose of "fine-tuning our litigation system to weed out some of its abuses and to improve its dispute-resolving function," and may include a requirement to pay attorneys' fees "as part of the damage caused by asserting and continuing to litigate frivolous claims." Oliveri, 803 F.2d at 1267, 1272; see also Chambers, 501 U.S. at 45-46, 111 S.Ct. at 2133 (lesser sanction of attorneys fees award serves the purpose of making a party whole for the expenses caused by its opponent's misconduct). Sanctions are appropriately imposed against counsel under Section 1927 where, as here, the bad faith assertion of a baseless counterclaim "unreasonably and vexatiously multiplied the proceedings by forcing [plaintiff] to move for its dismissal." Hudson Motors, 845 F.Supp. at 982. Likewise, sanctions are appropriately imposed against

a party and/or its counsel under a court's inherent authority, where, as here, a counterclaim is brought vexatiously and in bad faith.  Id.

An award of attorneys fees imposed as a sanction must be supported by contemporaneous time and expense reports specifying each attorney performing work on a matter, the date, hours expended and nature of the work.  See, e.g., Durant v. Traditional Investments, Ltd., 135 F.R.D. 42, 50 (S.D.N.Y. 1991).  Based on that information, courts determine "the amount of the sanction necessary and proper to reprove [the offending party] and to compensate [the injured party] for their attorneys' fees and expenses arising from [the] misconduct."  Id.

ICG and Levensohn request that the Court sanction the misconduct described above by ordering Defendant and/or Defendant's Counsel to bear the legal expenses incurred by ICG and Levensohn for preparation of a motion to dismiss the RICO claim.  In addition, ICG and Levensohn request that the Court award them the costs and attorneys fees for this motion, which were caused by the sanctionable conduct of Defendant and its counsel.  See, e.g., Nadler v. Princess Hotels, Intern., Inc., No. 94 Civ. 6986, 1996 WL 219639 (April 30, S.D.N.Y) (awarding costs and fees of bringing sanctions motion under Section 1927 and inherent power because they were "incurred because of defendant's and defendant's counsel's bad faith actions in vexatiously multiplying the litigation"), aff'd, 129 F.3d 114 (2d Cir. 1997).  Counsel for ICG and Levensohn will submit an affidavit with appropriate documentation to the Court to enable calculation of any attorneys' fee award based on the conduct complained of in this motion.

**D.      Defendant's False, Ungrounded And Inflammatory Pleading Should Be Sealed Or Otherwise Removed From The Record**

ICG and Levensohn ask the Court to seal or otherwise remove from the public record in this action Defendant's Original Pleading and all papers submitted in support of and in opposition to this motion.  Now withdrawn, it is no longer an operative pleading.  The allegations of criminal activity underpinning Defendant's groundless RICO claim are false, inflammatory, scandalous and likely to result in reputational injury.  As such, there is reason to remove the pleading and all documents containing and referring to the RICO counterclaim from the public purview.

"[P]arties may, by motion, request that particular documents be sealed."  Doctor's Assoc. Inc. v. QIP Holders LLC, No. 3:06cv1710, 2007 WL 2782516, 1 (D.Conn., Sept. 24, 2007); Rule 5(e) of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut.  Although there is a common-law right to inspect and copy judicial documents and proceedings, the right is not absolute, and the Court may invoke supervisory authority over its own records and files to deny public access where, for example, those files may "become a vehicle for improper purposes."  Nixon v. Warner Communications, Inc., 435 U.S. 589, 597-599, 98 S.Ct. 1306, 1312 - 1313 (1978).  In that regard,

> the common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case." *In re Caswell*, 18 R.I. 835, 836, 29 A. 259 (1893). Accord, *e. g., C. v. C.*, 320 A.2d 717, 723, 727 (Del.1974). See also *King v. King*, 25 Wyo. 275, 168 P. 730 (1917). Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, *Park v. Detroit Free Press Co.*, 72 Mich. 560, 568, 40 N.W. 731, 734-735 (1888); see *Cowley v. Pulsifer*, 137 Mass. 392, 395 (1884) (per Holmes, J.); *Munzer v. Blaisdell*, 268 App.Div. 9, 11, 48 N.Y.S.2d 355, 356 (1944); see also *Sanford v. Boston Herald-Traveler Corp.*, 318 Mass. 156,

14

158, 61 N.E.2d 5, 6 (1945), or as sources of business information that might harm a litigant's competitive standing, see, *e. g., Schmedding v. May*, 85 Mich. 1, 5-6, 48 N.W. 201, 202 (1891); *Flexmir, Inc. v. Herman*, 40 A.2d 799, 800 (N.J.Ch.1945).

Id.  Clearly, ICG's and Levensohn's interest in protecting their reputations from the taint of

false, unfounded alleged racketeering activities outweighs any public interest in inspecting

or copying Defendant's now inoperative original pleading.  See, e.g., Katzman, 167 F.R.D.

649 at 660; Kirk, 423 F. Supp. 2d at 150.

## CONCLUSION

Based on the foregoing, ICG and Levensohn respectfully request that the Court

(i)  impose sanctions upon Defendant and/or Defendant's Counsel in a sum equal to the attorneys fees that ICG and Levensohn were forced to incur in preparing a motion to dismiss the RICO counterclaim;

(ii)  order that the following documents be sealed or otherwise removed from the public record in this case:  Defendant's September 17, 2009 Answer, Counterclaim and Cross-claim and all papers submitted in support of and in opposition to this motion;

(iii) award ICG and Levensohn the costs and attorneys fees for this motion; and

(iii)  grant any further or different relief that the Court deems appropriate and just.

Dated:  New York, New York
        October 27, 2009

LAW OFFICES OF MARTIN J. MURRAY

By:  _____/s/ Martin J. Murray____
          Martin J. Murray (CT 08545)

Leza M. DiBella (admitted *pro hac vice*)
475 Park Avenue South, 25th Floor
New York, New York  10016
Telephone 212-725-2044
Facsimile: 212-725-1145
E-mail:  lawoffices@martinjmurray.com

*Attorneys for*
*Plaintiff/Counterclaim Defendant*
*ICG America, Inc. and*

15

*Additional Counterclaim Defendant*
*Peter Levensohn*

To:
Axinn, Veltrop & Harkrider LLP
Francis H. Morrison III
Andrea J. Sweet
90 State House Square
Hartford, CT 06103-3701
Telephone (860) 275-8100
Facsimile (860) 275-8101
Holland & Knight LLP
Brad R. Newberg
1600 Tysons Blvd. Ste. 700
McLean, VA 22102
Telephone (703) 720-8082
Facsimile (703) 720-8610

*Attorneys for*
*Defendant/Counterclaim Plaintiff*
*Wine of the Month Club, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
_____

ICG AMERICA, INC. (d/b/a "FLYING
NOODLE," "AMAZING CLUBS," AND
"CALIFORNIA REDS"),                                    Case No. 3:09-cv-00133 (PCD)

            Plaintiff and
            Counterclaim Defendant,

    - against -                                             **CERTIFICATE OF SERVICE**

WINE OF THE MONTH CLUB, INC.,

            Defendant and.
            Counterclaim Plaintiff,

    - against –

PETER LEVENSOHN,

            Additional Counterclaim
            Defendant.
_____


       I hereby certify that on October 27, 2009, a copy of the foregoing Memorandum
of Law in Support of ICG America Inc.'s and Peter Levensohn's Motion for Sanctions
was filed electronically and served by mail on anyone unable to accept electronic filing.
Notice of this filing will be sent by e-mail to all parties by operation of the Court's
electronic filing system or by mail to anyone unable to accept electronic filing as
indicated on the Notice of Electronic Filing.  Parties may access this filing through the
Court's CM/ECF System.

          ___/s/  Leza DiBella___

          Leza DiBella (admitted *pro hac vice*)
          Law Offices of Martin J. Murray
          475 Park Avenue South, 25th Floor
          New York, New York  10016
          Telephone 212-725-2044
          Facsimile: 212-725-1145
          E-mail:  lawoffices@martinjmurray.com